William W. Mercer
United States Attorney
District of Montana
P.O. Box 1478
Billings, MT 59103
(406) 657-6101
Email: bill.mercer@usdoj.gov

John N. Moscato
Senior Counsel
Environmental Enforcement Section
Environment and Natural Resources Division
United States Department of Justice
1961 Stout Street, 8th Floor
Denver, CO 80294
Phone: (303) 844 1380
Email: John.Moscato@usdoj.gov

*Attorneys for the United States*

William B. Kirley
Cynthia D. Brooks
Special Assistant Attorneys General
Montana Department of Environmental Quality
1100 N. Last Chance Gulch/P.O. Box 200901
Helena, MT 59620-0901
Telephone: (406) 841-5020
Telefax: (406) 841-5050
Email: cbrooks@mt.gov

Robert G. Collins
Supervising Assistant Attorney General
Mary Capdeville
Assistant Attorney General
Montana Department of Justice
1301 East Lockey/P.O. Box 201425
Helena, MT 59620-1425
Telephone: (406) 444-0205
Telefax: (406) 444-0236
Email: rcollins@mt.gov; mcapdeville@mt.gov

*Attorneys for the State of Montana*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## HELENA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, and<br>STATE OF MONTANA, | ) ) ) | Case No. CV-08-30-H-DWM |
| Plaintiffs, | ) ) | |
| vs. | ) ) | **COMPLAINT** |
| ASARCO, LLC,<br>ATLANTIC RICHFIELD COMPANY, and<br>ARCO ENVIRONMENTAL REMEDIATION, L.L.C., | ) ) ) ) | |
| Defendants. | ) ) | |

Plaintiff, the United States of America, by its undersigned attorney, by the authority of the Attorney General of the United States, and at the request of the United States Department of Agriculture, Forest Service ("USDA-FS"), and co-plaintiff the State of Montana ("State"), by its undersigned attorneys, by and through and on behalf of the Montana Department of Environmental Quality ("MDEQ") and the Montana Department of Justice ("MDOJ"), allege that:

## NATURE OF THE ACTION

1.     This is a civil action to abate an imminent and substantial endangerment to the public health and welfare and to the environment arising from the release and threats of release of hazardous substances at and from the Mike Horse Mine and surrounding area ("Site") in Lewis and Clark County, Montana; to recover clean up costs incurred and to be incurred in connection with the Site; to recover natural resource damages ("NRD"), including NRD assessment costs, to restore the natural resources that have been lost or injured; and to recover oversight and

2

enforcement costs. This action is brought by the United States pursuant to Sections 106, 107 and 113(f) of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 ("CERCLA"), as amended, 42 U.S.C. §§ 9606, 9607, and 9613(f); Sections 301(a), 309(b), and 311 of the Clean Water Act ("CWA"), 33 U.S.C. §§ 1311(a), 1319(b), and 1321; and Section 7003 of the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. § 6973, and by the State of Montana pursuant to pursuant to Sections 106, 107 and 113(f) of CERCLA, the Comprehensive Environmental Cleanup and Responsibility Act ("CECRA"), Mont. Code Ann. §§ 75-10-701 through 752, and the Montana Water Quality Act ("WQA"), Mont. Code Ann. §§ 75-5-101, *et seq.*, Sections 301(a), 309(b), and 311 of the CWA, and Section 7002 of RCRA, 42 U.S.C. § 6972.

## JURISDICTION AND VENUE

2.     The United States brings this complaint and this Court has jurisdiction over this matter and over the Parties pursuant to 28 U.S.C. §§ 1331 and 1345; Sections 107(a) and 113(b) of CERCLA, 42 U.S.C. §§ 9607(a) and 9613(b); Section 309(b) of the CWA, 33 U.S.C. § 1319(b); and Section 7003 of RCRA, 42 U.S.C. § 6973.

3.     The State brings this action under the authority of CECRA, Mont. Code Ann. §§ 75-10-701 through 752, Sections 107(a) and 113(b) of CERCLA, 42 U.S.C. §§ 9607(a) and 9613(b); the Uniform Declaratory Judgment Act, Mont. Code Ann. §§ 27-8-101 through 313; and the WQA, §§ 75-5-101, *et seq.* and various other theories. This Court has supplemental jurisdiction over the State's claim under 28 U.S.C. § 1367.

4.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) and (c), 42 U.S.C. § 9613(b), 33 U.S.C. § 1319(b), and 42 U.S.C. § 6928(a), because the Site is located in, the

defendants do business in, and the release or threatened release of hazardous substances which are the subject of this action occurred in this judicial district.

## PLAINTIFFS

5.     The United States is the authority responsible for responding to releases of hazardous substances on lands within the National Forest System under Section 106 of the CERCLA, 42 USC §9606, and is a trustee for natural resources on lands within the National Forest System injured as a result of releases of hazardous substances pursuant to Section 107(f)(2)(A) of CERCLA, 42 U.S.C. § 9607(f)(2)(A).

6.     The President has designated the Secretaries of Agriculture and Interior as trustees for various natural resources within the Site.  *See* Exec. Order No. 12,580, *as amended by* Exec. Order No. 13,016, 61 Fed. Reg. 45871 (Aug. 28, 1996); 40 C.F.R. § 300.600(b)(2).  Federal trusteeship for the Site includes, but is not limited to, the following natural resources and their supporting ecosystems: threatened and endangered species, migratory birds, certain anadromous fish and certain federally managed water resources.

7.     The State, acting through MDEQ, is the authority responsible for responding to releases of hazardous or deleterious substances under CECRA, Mont. Code Ann. § 75-10-711(8).  The State, acting through MDEQ and MDOJ, is charged under State law with the responsibility for protecting and conserving the natural resources of the State.  The State holds all of its natural resources, including the land, fish, wildlife, air, and water, located within the political boundaries of the State of Montana in trust on behalf of and for the benefit of the public.

## DEFENDANTS

8.     ASARCO, LLC is a Delaware Limited Liability Company authorized to do business in the State of Montana.  ASARCO, LLC maintains its principal place of business at

4

1150 N. 7th Avenue, Tucson, Arizona 85705.  ASARCO, LLC was formerly ASARCO, Inc., a New Jersey corporation.

9.      Defendant Atlantic Richfield Company is a Delaware corporation authorized to do business in the State of Montana.  Atlantic Richfield Company maintains its principal place of business at 200 E. Randolph Drive, Chicago, Illinois 60601.

10.      Defendant ARCO Environmental Remediation, L.L.C. is a Delaware limited liability company authorized to do business in the State of Montana.  ARCO Environmental Remediation, L.L.C. identifies its principal place of business as 1209 Orange Street, Wilmington, Delaware 19801.

11.      For purposes of this Complaint, Atlantic Richfield Company and ARCO Environmental Remediation, L.L.C. are collectively referred to as "ARCO" and each allegation made with reference to "ARCO" is made as to each company both individually and collectively.

## GENERAL ALLEGATIONS

12.      The Site, known generally as the Heddleston Mining District, is an area greater than 50 acres in size located in the about 15 miles east of Lincoln in Lewis & Clark County.

13.      The Site was mined intermittently from 1889 though mid - 1960.  Mining exploration at the Site continued through the 1980s.  These mining and exploration activities were undertaken by ASARCO, ARCO, their predecessors in interest, and others.

14.      In about 1941, the Mike Horse Mining and Milling Company, ASARCO's predecessor-in-interest, built a 200 tons-per-day flotation mill at the Mike Horse Mine on-Site and began impounding mill tailings from that mill behind a dam it constructed in the mouth of Beartrap Creek.

15.     In mid-1945, ASARCO, through a wholly owned subsidiary, Federal Mines, acquired the Mike Horse Mining and Milling Company and its patented and unpatented claims on-Site.

16.     ASARCO owned and operated the Mike Horse Mine from 1945 until November 10, 1952 when ASARCO announced the mine's closure. By this time the dam which impounded the mill tailings was approximately 50 feet high, 450 feet long, and contained a large volume of tailings.

17.     In 1958, Norman Rogers leased the Mike Horse Mine and related property at the Site from ASARCO. On July 3, 1964, the Anaconda Company, a predecessor-in-interest to ARCO, with ASARCO's approval, took an assignment of the Rogers' lease interest. From 1964 through 1981, ARCO and its predecessor-in-interest conducted mining exploration activities at the Site. During that period, ARCO also operated the headgate and diversion which controlled flow from Bear Trap Creek into the Mike Horse tailings impoundment. The interests Anaconda acquired by the assignment of the Rogers' lease were not transferred back to ASARCO until November 19, 1981.

18.     Prior to 1975, ARCO was warned, on more than one occasion, that the Mike Horse tailings impoundment was in an unsafe condition. On June 19, 1975, heavy runoff from a spring storm, coupled with rapid snow melt, resulted in high flows in Beartrap Creek. Beartrap Creek emptied into the Mike Horse tailings impoundment. A combination of events related to the storm runoff, including blockage of the impoundment diversion ditch from a mudslide, blockage of the reservoir decant pipe by runoff debris, and the high reservoir inflow rate, caused Beartrap Creek to flow, unrestricted, into the Mike Horse tailings impoundment and the impoundment level to rise and overtop the dam.

19.     As a result of the June 19, 1975 breach of the Mike Horse tailings dam, a large volume of tailings and fill/colluvial material, which contained CERCLA hazardous substances and CECRA hazardous or deleterious substances, were released into the Upper Blackfoot River downstream of the Mike Horse tailings impoundment.  The released tailings and fill/colluvial material have come to be located along the main stem of the Upper Blackfoot River downstream to its confluence with the Clark Fork River.  ARCO repaired the tailings dam in the fall of 1975 and made additional improvements in 1980.  The 1975 repairs included the rehabilitation of the headgate and diversion ditch that failed in the 1975 flood and the installation of a spillway pipe. The headgate structure was removed from service in 1976 and, since that time, Beartrap Creek has flowed, unrestricted, into the impoundment.  In 2005, a USFS Dam Safety Report concluded that the tailings dam is a compromised structure and should be removed from service.

20.     The Mike Horse Mine together with its associated waste rock dumps, tailings, tailings impoundments, and other workings have contaminated and continue to contaminate or threaten to contaminate surface water, soils, and groundwater and other environmental media, and natural resources, including fish and wildlife, with hazardous substances.

21.     Concentrations of cadmium and zinc in groundwater at the Site exceed Safe Drinking Water Act ("SDWA") or other relevant federal or Montana criteria and standards and are sufficient to cause and have caused injury to other natural resources that come in contact with the groundwater (e.g., surface water).

22.     Surface water at the Site contains concentrations of dissolved metals, including cadmium and zinc, that exceed relevant federal or Montana criteria and standards, in water that previously met the criteria and is subject to a committed use for aquatic habitat, water supply,

and recreation, including trout fishery.  Concentrations of these metals are sufficient to have

caused and continue to cause injury to biological resources exposed to the surface water.

23.     Tailings laden sediments at the Site, a component of the surface water resource,

suffer from concentrations and durations of arsenic, cadmium, and zinc that have caused and are

sufficient to cause injury to biological, groundwater, and surface water resources that come into

contact with the sediments.

24.     The Site is the historical home of a wide range of aquatic biota, including benthic

macroinvertebrates; aquatic, semiaquatic, and amphibious animals; and aquatic and wetland

plants and their supporting ecosystem which have been adversely impacted by mining and related

activities undertaken by Defendants at the Site.

25.     Upland and riparian habitat are natural resources that are injured when hazardous

substances affect the geologic resources in the flood plain, reducing soil pH and causing

phytotoxic responses such as retardation of plant growth.  Mine waste and tailings cover a large

portion of the Site and result in vegetation loss in upland and riparian areas throughout the Site.

26.     ARCO and ASARCO each are liable for the acts, omissions, and liabilities of

their corporate predecessors in connection with the Site.

27.     In November 2002, ASARCO voluntarily entered into an Administrative Order on

Consent ("AOC") with the USDA Forest Service, for performance of an Engineering Evaluation

/Cost Analysis ("EE/CA") for the Site.  The objective of the AOC was for ASARCO to conduct

an EE/CA to determine and evaluate removal action requirements and alternatives designed to

prevent, mitigate, or otherwise respond to or remedy any release or threatened release of

hazardous substances at the USDA Forest Service portions of the Site.

28.     On July 23, 2007, USDA-FS issued an Action Memorandum, based on the EE/CA completed by ASARCO.  The Action Memorandum selected a non-time-critical Removal Action for responding to the environmental impacts at the Mike Horse Dam and Impounded Tailings, Lower Mike Horse Creek, Beartrap Creek and the Upper Blackfoot River Floodplain removal areas within the Site.

29.     On or about June 20, 1991, MDEQ sent letters to ASARCO and ARCO entitled "General Notice Letter."  These letters notified ASARCO and ARCO that releases had occurred from the Site for which ASARCO and ARCO were liable under CECRA.

### FIRST CLAIM FOR RELIEF
(Plaintiffs' Claim Under Section 107 of CERCLA)

30.     Paragraphs 1 through 29 are re-alleged and incorporated herein by reference.

31.     Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), provides in pertinent part as follows:

Notwithstanding any other provision or rule of law, and subject only to the defenses set forth in subsection (b) of this section –

(1) the owner and operator of a vessel or a facility,
(2) any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of, . . . shall be liable for –
        (A)  all costs of removal or remedial action incurred by the United States Government or a State . . . not inconsistent with the national contingency plan . . .
        (C) damages for injury to, destruction of, or loss of natural resources, including the reasonable costs of assessing such injury, destruction, or loss resulting from such a release . . . .

32.     The Site, including its wetlands, surface and sub-surface soils, and water, is a "facility," within the meaning of Sections 101(9) and 107(a) of CERCLA, 42 U.S.C. §§ 9601(9) and 9607(a).

33.   The substances at the Site released as a result of Defendants' acts or omissions, including those contaminating natural resources, are "hazardous substances," within the meaning of Sections 101(14), 104(a), and 107(a) of CERCLA, 42 U.S.C. §§ 9601(14), 9604(a), and 9607(a).

34.   There is and was a "release" or "threatened release" of "hazardous substances" into the "environment" at and from the Site, within the meaning of Sections 101(8), 101(14), 101(22), 104(a), and 107(a) of CERCLA, 42 U.S.C. §§ 9601(8), 9601(14), 9601(22), 9604(a), and 9607(a).

35.   Hazardous substances were "disposed" of at the Site, within the meaning of Sections 101(14), 101(29) and 107(a) of CERCLA, 42 U.S.C. §§ 9601(14), 9601(29) and 9607(a).

36.   ASARCO and ARCO and one or more of their corporate predecessors, are within the class of persons described in Section 107(a) of CERCLA, 42 U.S.C. § 9607(a).

37.   ASARCO and one or more of its corporate predecessors, is and/or was the owner and/or operator of the Site, within the meaning of Section 101(20)(A) of CERCLA, 42 U.S.C. § 9601(20)(A), at the time when hazardous substances were release or disposed of on-Site.

38.   ARCO and one or more of its corporate predecessors, is and/or was the owner and/or operator of the Site, within the meaning of Section 101(20)(A) of CERCLA, 42 U.S.C. § 9601(20)(A), at the time when hazardous substances were release or disposed of on-Site.

39.   Actions taken by the United States and the State in connection with the Site constitute "response" actions within the meaning of Section 101(25) of CERCLA, 42 U.S.C. § 9601(25). The United States and the State have incurred response costs in connection with such actions. The response costs were incurred not inconsistent with the NCP.

40.     Pursuant to Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), ASARCO and ARCO are jointly and severally liable to the United States and the State for all response costs, including but not limited to those incurred in performing the removal action as selected by USDA-FS in its July 23, 2007 Action Memorandum.

41.     Pursuant to Section 113(g) of CERCLA, 42 U.S.C. § 9613(g), the Court should enter a declaratory judgment that ASARCO and ARCO are jointly and severally liable for further response costs to be incurred by the USDA-FS and the State in connection with the Site.

42.     The release of hazardous substances at and from the Site caused injury to, destruction of, and loss of natural resources at the Site, within the meaning of Section 107(a)(4)(C) of CERCLA, 42 U.S.C. § 9607(a)(4)(C).  The United States and the State have incurred and continue to incur damages for injury to, destruction of, or loss of natural resources, including costs related to the assessment of the loss of natural resources resulting from the release of hazardous substances at the Site.

43.     Pursuant to Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), ASARCO and ARCO are jointly and severally liable to the United States and the State for damages for injury to, destruction of, and loss of natural resources and services resulting from the release of hazardous substances at or from the Site, including the loss of use and costs of restoration, replacement, or acquisition of equivalent resources and for the costs of assessing such injury and damages.

## SECOND CLAIM FOR RELIEF
(United States' Claim under Section 106 of CERCLA)

44.     Paragraphs 1 through 43 are re-alleged and incorporated herein by reference.

45.     There is or may be an imminent and substantial endangerment to the public health

or welfare or the environment because of an actual or threatened release of hazardous substances at or from the Site within the meaning of Section 106(a) of CERCLA, 42 U.S.C. § 9606(a).

46.    The Court should order ASARCO and ARCO to fully and timely complete all response actions necessary to abate such danger or threat, including implementation of the removal action selected by the USDA-FS in its July 23, 2007 Action Memorandum.

**THIRD CLAIM FOR RELIEF**
(Plaintiffs' Claims under Section 301(a) and 309(b) of the CWA)

47.    Paragraphs 1 through 46 are re-alleged and incorporated herein by reference.

48.    Section 301(a) of the CWA, 33 U.S.C. § 1311(a) prohibits the "discharge of any pollutant by any person" except in compliance with certain sections of the CWA.

49.    The term "discharge of pollutants" is defined in Section 502(12) of the CWA, 33 U.S.C. § 1362(12), to mean "any addition of any pollutant to navigable waters from any point source."

50.    The Upper Blackfoot River is a "navigable water" within the meaning of Section 502(7) of the CWA, 33 U.S.C. § 1362(7) or, in the alternative, a continuously flowing tributary to the Clark Fork River, itself a navigable water.

51.    The term "point source" is defined in Section 502(14) of the CWA, 33 U.S.C § 1362(14) to mean "any discernible, confined and discrete conveyance, including but not limited to any pipe, ditch, channel, tunnel, conduit . . . from which pollutants are or may be discharged."

52.    The substances at the Site, including those contaminating natural resources, are "pollutants" within the meaning of Section 502(6) of the CWA, 33 U.S.C. § 1362(6).

53.     ASARCO and ARCO, and one or more of their corporate predecessors, are within the class of persons described in Section 502(5) of the CWA, 33 U.S.C. § 1362(5).

54.     ASARCO and ARCO, and one or more of their corporate predecessors, discharged pollutants into navigable waters from a point source at the Site, within the meaning of Sections 301(a) and 502(6), (7), (12) and (14), 33 U.S.C. §§ 1311 and 1362(6), (7), (12) and (14), in violation of any permit condition or limitation implementing Section 301 of the CWA, 33 U.S.C. § 1311, as provided by Section 402 of the CWA, 33 U.S.C. § 1342.

55.     Section 309(b) of the CWA, 33 U.S.C. § 1319(b), authorizes commencement by the United States of a civil action for appropriate relief, including a permanent or temporary injunction, when any person is in violation of various sections of the CWA including Section 301, 33 U.S.C. § 1311.59.

56.     Pursuant to the Debt Collection Improvement Act of 1996 (28 U.S.C. § 2461), after March 15, 2004, any person who violates various sections of the CWA including Section 301, 33 U.S.C. § 1311, shall be subject to a civil penalty not to exceed $32,500 per day for such violation. *See* 69 Fed. Reg. 7121 (Feb. 13, 2004).

### FOURTH CLAIM FOR RELIEF
(Plaintiffs' Claims under Section 311 of the CWA)

57.     Paragraphs 1 through 56 are re-alleged and incorporated herein by reference.

58.     Section 311(b)(3) of the CWA, 33 U.S.C. § 1321(b)(3) prohibits the discharge of harmful quantities of hazardous substances "into or upon the navigable waters of the United States."

59.     Section 311(f) of the CWA, 33 U.S.C. § 1321(f), makes owners and operators liable for the unlawful discharge of hazardous substances. ASARCO and ARCO, and one or

more of their corporate predecessors, are within the class of persons described in Section 311(f)

of the CWA, 33 U.S.C. § 1321(f).

      60.     Under Section 311(f)(4) of the CWA, 33 U.S.C. § 1321(f)(4), such liability

includes "any costs or expenses incurred by the Federal Government or any State government in

the restoration or replacement of natural resources damaged or destroyed as a result of a

discharge of a hazardous substance" in violation of Section 311(b) of the CWA.

### FIFTH CLAIM FOR RELIEF
(United States' Claim under Section 7003 of RCRA)

      61.     Paragraphs 1 through 60 are re-alleged and incorporated herein by reference.

      62.     Section 7003(a) of RCRA, 42 U.S.C. § 6973 provides:

Notwithstanding any other provision of this chapter, upon receipt of evidence that
the past or present handling, storage, treatment, transportation or disposal of any
solid waste or hazardous waste may present an imminent and substantial
endangerment to health or the environment, the Administrator may bring suit on
behalf of the United States in the appropriate district court against any person
(including any . . . past or present owner or operator of a treatment, storage, or
disposal facility) who has contributed or who is contributing to such handling,
storage, treatment, transportation or disposal to restrain such person from such
handling, storage, treatment, transportation, or disposal, to order such person to
take such other action as may be necessary, or both.

      63.     ASARCO and ARCO were owners or operators of a storage or disposal facility

and ASARCO continues to own and or operate said facility.  Further, each was engaged in the

handling, storage, treatment, and disposal of hazardous wastes at the facility that presented and

do present an imminent and substantial endangerment to health or the environment, within the

meaning of Section 7003 of RCRA, 42 U.S.C. § 6973.

      64.     Based on the handling, storage, treatment and disposal of hazardous wastes at the

Site, which may present an imminent and substantial endangerment to human health and the

environment, the United States is authorized by Section 7003 of RCRA, 42 U.S.C. § 6973, to

seek an order from this Court requiring ASARCO and ARCO to take appropriate actions,

including the implementation of the remedy selected by the USDA-FS's Action Memorandum

for the Site, to abate the imminent and substantial endangerment to human health and the

environment, or threat thereof, posed by this facility.

### SIXTH CLAIM FOR RELIEF
(State's Claim under Section 7002 of RCRA)

65.    Paragraphs 1 through 64 are re-alleged and incorporated herein by reference.

66.    Section 7002(a)(1)(B) of RCRA, 42 U.S.C. § 6972(a)(1)(B) provides:

> Except as provided in subsection (b) or (c) of this section, any person may
> commence a civil action on his own behalf ...against any person
> ...including any past or present generator, past or present transporter, or
> past or present owner or operator of a treatment, storage, or disposal
> facility, who has contributed or who is contributing to the past or present
> handling, storage, treatment, transportation, or disposal of any solid or
> hazardous waste which may present an imminent and substantial
> endangerment to health or the environment

67.    ASARCO and ARCO were owners or operators of a storage or disposal facility

and ASARCO continues to own and or operate said facility.  Further, each were engaged in the

handling, storage, treatment, and disposal of hazardous wastes at the facility that presented and

do present an imminent and substantial endangerment to health or the environment, within the

meaning of Section 7002 of RCRA, 42 U.S.C. § 6972.

68.    Based on the handling, storage, treatment and disposal of hazardous wastes at the

Site, which may present an imminent and substantial endangerment to human health and the

environment, the State is authorized by Section 7002 of RCRA, 42 U.S.C. § 6972, to seek an

order from this Court requiring ASARCO and ARCO to take appropriate actions to abate the

imminent and substantial endangerment to human health and the environment, or threat thereof,

posed by this facility.

## SEVENTH CLAIM FOR RELIEF
### (State's Claim for Abatement under CECRA)

69.     The State re-alleges paragraphs 1 through 68.

70.     The State brings this action for an order from this Court under Mont. Code Ann. § 75-10-711(8) requiring ASARCO and ARCO to abate the imminent and substantial endangerment to the public health, safety or welfare or to the environment resulting from the releases or threatened releases of hazardous or deleterious substances from the Site.

## EIGHTH CLAIM FOR RELIEF
### (State's Claim for CECRA Cost Recovery and Natural Resource Damages)

71.     The State re-alleges paragraphs 1 through 70.

72.     Mine wastes, and pollutants and contaminants found at and in the vicinity of the Site are "hazardous or deleterious substances" as that term is defined in CECRA, Mont. Code Ann. § 75-10-701(8).

73.     Mining or milling wastes at the Site have been released from the Site within the meaning of CECRA.

74.     The Site is a "facility" as that term is defined in CECRA, Mont. Code Ann. § 75-10-701(4).

75.     The release of mining or milling wastes at the Site has caused and are continuing to cause injury to, destruction of, and loss of "natural resources," as that term is defined in Mont. Code Ann. § 75-10-701(12), owned, managed, held in trust, or otherwise controlled by or appertaining to the State.

76.     ASARCO and ARCO have failed to take immediate action to contain, remove, or abate all of the releases from the Site.

77.     The State has taken, and continues to take remedial actions, as that phrase is used in CECRA, in response to releases at the Site.  As a result of its remedial actions at the Site, the State has incurred remedial action costs within the meaning of CECRA.  The State's remedial action costs are reasonable and are related to the releases at the Site.  Despite the State's written demands, neither ASARCO, ARCO, nor any other person has reimbursed all of the State's remedial action costs.

78.     The State has satisfied any and all conditions precedent to the undertaking of remedial actions, precedent to incurring remedial action costs at the Site, and precedent to the full recovery of such costs jointly and severally from ASARCO and ARCO.

79.     At least 60 days have elapsed since ASARCO and ARCO received notice from the State that remedial action costs are due.

80.     ASARCO and ARCO are liable persons within the meaning of CECRA, Mont. Code Ann. § 75-10-715, because they are or were the owner or operator of the facility herein, they or their predecessors-in-interest owned or operated these facilities at the time of disposal of the hazardous or deleterious substances, they or their predecessors-in-interest generated, possessed, or were otherwise responsible for and contracted, agreed or otherwise arranged for the disposal or treatment or transport for disposal or treatment of hazardous or deleterious substances at the facilities, and/or they or their predecessors-in-interest accepted hazardous or deleterious substances for transport to the facilities.

81.     ASARCO and ARCO each are jointly and severally liable to the State under CECRA, both for the remedial action costs the State has incurred and will continue to incur in connection with releases or threatened releases from the Site and for interest at the rate allowed by law.

82.     ASARCO and ARCO each are jointly and severally liable to the State under

CECRA for the natural resource damages caused by the releases or threatened releases from the

Site, including reasonable technical and legal costs of assessing and enforcing this claim.

### NINTH CLAIM FOR RELIEF
(State's Claim for Abatement under the Montana Water Quality Act Mont. Code Ann. § 75-5-613 )

83.     The State re-alleges paragraphs 1 through 82.

84.     The acts or omissions of the Defendants, and each of them, have polluted or

contributed to pollution of state waters.

85.     These acts or omissions of Defendants, and each of them, resulted in violation of

the Montana Water Quality Act for which a compliance order may be issued requiring that the

Defendants prevent, abate, and control said pollution.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs the United States of America and the State of Montana pray that this

Court:

A.      Enter judgment in favor of the United States and the State of Montana

holding ASARCO and ARCO jointly and severally liable for CERCLA

response costs incurred by the United States and the State of Montana in

connection with the Site together with interest and enforcement costs;

B.       Enter a declaratory judgment that ASARCO and ARCO are jointly and

severally liable to the United States and the State of Montana for further

CERCLA response costs incurred in connection with the Site;

C.      Enter a judgment against ASARCO and ARCO jointly and severally for

liability to the State of Montana for all CECRA remedial action costs

incurred or to be incurred by the State of Montana in connection with the Site together with interest and enforcement costs;

D. Grant the United States and State of Montana affirmative injunctive relief requiring ASARCO and ARCO to abate the imminent and substantial endangerment posed by the Site;

E. Enter a judgment against ASARCO and ARCO jointly and severally for liability to the United States and the State of Montana for all damages for injury to, destruction of, and loss of natural resources at the Site including the un-reimbursed past, present, and future costs of assessing such damages, the cost of restoring, replacing, and/or acquiring the equivalent of those injured resources, and the past, present, and future diminution in value of those resources pending restoration or replacement, in an amount to be proven at trial;

F. Pursuant to Sections 301(a) and 309(b) of the CWA, 33 U.S.C. §§ 1311(a) and 1319(b) of the CWA, impose a civil penalty on ASARCO and ARCO of not more than $32,500 per day for each day contaminants and pollutants were released from the facility;

G. Enter a judgment against ASARCO and ARCO jointly and severally in favor of the United States and the State of Montana for all costs of this action, including attorney's fees; and

H. Award the United States and the State of Montana such other and further relief as this Court may deem appropriate.

Dated this 25th day of April, 2008.

Respectfully submitted,
**ON BEHALF OF THE UNITED STATES:**

Ronald J. Tenpas
Assistant Attorney General
Environment and Natural Resources Division

William W. Mercer
United States Attorney
District of Montana
P.O. Box 1478
Billings, MT 59103
(406)657-6101
Email: bill.mercer@usdoj.gov

John N. Moscato
Senior Counsel
Environmental Enforcement Section
Environment and Natural Resources Division
United States Department of Justice
1961 Stout Street, 8th Floor
Denver, CO 80294
Phone: (303) 844-1380
Email: John.Moscato@usdoj.gov

**ON BEHALF OF THE STATE OF MONTANA:**

Robert Collins
Supervising Assistant Attorney General
Mary Capdeville
Assistant Attorney General
Montana Department of Justice
1301 East Lockey • P.O. Box 201425
Helena, MT 59620-1425

William B. Kirley
Cynthia D. Brooks
Special Assistant Attorneys General
Montana Department of Environmental Quality
1100 North Last Chance Gulch, P.O. Box 200901
Helena, MT  59620-0901